UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **Case No. 3:07-cr-00117** |
| | ) | **Judge Trauger** |
| v. | ) | |
| | ) | |
| CHRISTOPHER LEE STANTON, | ) | |
| | ) | |
| | ) | |

## MEMORANDUM

Pending before the court is defendant Christopher Lee Stanton's Motion for Pre-Trial Determination as to Whether Defendant is Armed Career Criminal as Defined by 18 U.S.C. § 924(e). (Docket No. 52.) For the reasons discussed herein, the relief sought by the defendant will be denied; that is, the court, considering the merits of the defendant's position, concludes that the defendant would qualify as an Armed Career Criminal if he should be convicted on the charge that is currently pending against him in this court.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 27, 2007, a grand jury sitting in the Middle District of Tennessee indicted the defendant, Christopher Lee Stanton, on the charge that he was a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924 (the "Felon in Possession charge"). (Docket No. 1.) Specifically, the indictment charges that "on or about January 30, 2006, ... [the defendant], having previously been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce, a firearm, to wit: a ... 20-gauge shotgun." (*Id.*) The defendant was subsequently arrested and, on

1

July 27, 2007, he pled not guilty. (Docket No. 9.)

Since that time, the defendant has, on multiple occasions, sought (and received from the court) continuances of the trial of this matter. (*See* Docket Nos. 15, 19, 33, 42, 44, and 47.) A primary reason cited by defense counsel for these continuance requests was counsel's need to conduct research and to obtain discovery regarding the defendant's prior criminal convictions and whether those convictions would subject the defendant, if convicted of the Felon in Possession charge, to a significant sentence enhancement under the Armed Career Criminal Act (ACCA). (*See id.*) Through this motion, counsel claims that, despite his independent research and fact finding on these matters, the facts of the previous convictions and the recent decisions of the Supreme Court render it impossible for him to provide clear advice to his client about the potential length of the defendant's sentence if the defendant is convicted of the Felon in Possession charge. (Docket No. 52 at 2-3.) The defendant asks the court to clarify this issue by ruling, as a matter of law, that the defendant would not qualify for the ACCA sentencing enhancement.

## **ANALYSIS**

Ordinarily, a defendant convicted of a Felon in Possession charge faces a maximum prison sentence of ten years. 18 U.S.C. § 922(g)(1); 18 U.S.C. § 924(a)(2). If, however, because of previous criminal convictions, that defendant qualifies as an "Armed Career Criminal" under the ACCA (embodied in 18 U.S.C. § 924(e)), then the defendant, upon his conviction on the Felon in Possession charge, is subject to a mandatory minimum sentence of fifteen years. 18 U.S.C. § 924(e). Here, the parties agree that the defendant, who is facing a Felon in Possession charge, has prior criminal convictions, but they dispute whether the convictions would be

2

sufficient to qualify the defendant as an Armed Career Criminal, assuming his conviction on the Felon in Possession charge.

**I.      Whether the Defendant Would Qualify as an "Armed Career Criminal"**

The ACCA states that, "in the case of a person who violates Section 922(g) of this title and has three previous convictions by any court referred to in Section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under Section 922(g)." 18 U.S.C. § 924(e)(1).

The parties agree that the only potential "previous convictions" that could expose the defendant to the ACCA enhancement are "violent felonies," that is, the defendant does not have "serious drug offenses" on his record. A violent felony is defined in the ACCA as "any crime punishable by imprisonment for a term exceeding one year ... that – (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another ... ." 18 U.S.C. § 924(e)(2)(B). The key question, then, is whether the defendant has at least three qualifying violent felony convictions.[1]

---

[1] While asserting that the defendant does have the requisite number of convictions, the Government, without explanation, also asserts that the defendant's motion is "premature." (Docket No. 58 at 1.) A review of similar cases indicates that the determination of whether the defendant qualifies as an Armed Career Criminal is commonly made after the conviction on the underlying charge. *See e.g. United States v. Thomson*, 268 Fed. Appx. 430, 432 (6th Cir. 2008);

3

### A. The Number of Violent Felonies

The parties do not dispute that the defendant has four, potentially qualifying, convictions. (See Docket No. 58 at 1; Docket No. 52 at 11-17.) That is, a January 8, 1998 Tennessee state court judgment reflects that the defendant pled guilty to an August 31, 1996 burglary of a business, and a July 15, 1997 Tennessee state court judgment reflects that the defendant pled guilty to two counts of aggravated burglary (burglary of a habitation) and one count of aggravated assault – stemming from incidents in February 1997. (*See id.*)

The defendant argues that the August 1996 "burglary of a non-habitation" does not qualify as a "violent felony" for purposes of the ACCA. (Docket No. 52 at 11.) As to the February 1997 incidents, the defendant concedes that aggravated assault and aggravated burglary qualify as "violent felonies" under the ACCA, but the defendant argues that, because the February 1997 incidents constituted a "single [criminal] episode" occurring on a single day, the three convictions should only be counted as a single predicate felony for purposes of the ACCA, because the offenses were not "committed on occasions different from one another." (*Id.* at 14-17.)

#### 1. The non-habitation burglary

As noted above, "burglary" is explicitly mentioned within the ACCA definition of a

---

*United States v. Mahon*, 444 F.3d 530, 532 (6th Cir. 2006). That said, the Sixth Circuit did not object to at least one district court making a "preliminary" determination of whether, if convicted of the underlying charge, the defendant would qualify as an Armed Career Criminal. *See United States v. Player*, 201 Fed. Appx. 331, 332-33 (6th Cir. 2006). While the court cannot find the defendant to be an "Armed Career Criminal" without a conviction on the Felon in Possession charge, there appears to be nothing procedurally improper about the court's making a preliminary finding regarding what the defendant's status would be, assuming a conviction and assuming that the evidence in the record is, in essence, the same at the time of sentencing.

4

"violent felony." 18 U.S.C. § 924(e)(2)(B)(ii). Therefore, facially, it appears that the defendant's August 31, 1996 burglary of a non-habitation would qualify as a violent felony for purposes of the ACCA sentence enhancement.

There is, however, a significant amount of case law on the issue of whether a specific defendant's previous state law burglary conviction will count as a "violent felony" burglary conviction for purposes of the ACCA sentence enhancement provision. Driving this case law is the fact that many state burglary statutes punish conduct that is significantly broader in scope (intruding onto or into ships, cars, trailers, vending machines, etc.) than that described in the "generic" hornbook definition of burglary, which is concerned with illegal intrusions into a "structure" such as a home. *See e.g. Thomson*, 268 Fed. Appx. at 433-34.

In *Taylor v. United States*, the Supreme Court confronted the issue of whether Congress intended to include all of these state law burglary statutes within the ACCA's unstated definition of burglary. 495 U.S. 575, 599 (1990). Concluding that Congress did not so intend, the *Taylor* Court concluded that "a person has been convicted of burglary for purposes of a[n ACCA] enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* This definition of "burglary" is referred to as "generic burglary," and state burglary statutes that, in addition to punishing "generic" burglary, punish conduct broader in scope then that described in the definition of generic burglary are referred to as "non-generic" burglary statutes. *Id.*

In *Shepard v. United States,* the Supreme Court confronted the related issue of what evidence a federal district court, considering an ACCA enhancement, may consider in

5

determining whether a previous guilty plea to burglary under a non-generic statute was a plea to conduct amounting to a "generic burglary." 544 U.S. 13, 17 (2005). In *Shepard*, the Court concluded that the "enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.* at 26. These categories of documents are sometimes referred to as "*Shepard*-approved sources." *See U.S. v. Bookman*, 263 Fed. Appx. 398, 401 (5th Cir. 2008). The Sixth Circuit has confirmed that a court judgment is a "comparable judicial record," and, therefore, is a *Shepard* approved source. *See United States v. Armstead*, 467 F.3d 943, 948 (6th Cir. 2006).

As to the August 31, 1996 burglary, the indictment and judgment (submitted into the record of this case by the defendant) demonstrate that the defendant pled guilty to burglary under Tennessee Code Provision 39-14-402. (Docket No. 52 Ex. 2.) That code provision, which prohibits certain intrusions into non-habitations, is a non-generic burglary statute because it punishes illegal intrusions into conveyances such as a "passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle," along with intrusions into more traditional, generic areas for "burglary," such as office buildings and stores. T.C.A. § 39-14-402. As the defendant pled guilty to burglary under a non-generic statute, the court should look to "*Shepard*-approved sources" to determine if the burglary was a qualifying generic burglary under *Taylor*.

The indictment (a *Shepard*-approved source) related to the August 31, 1996 burglary states that the defendant, "without the effective consent of the property owner, did intentionally,

6

knowingly, or recklessly enter the building other than a habitation or any portion thereof of Qualls Paint and Body Shop, not open to the public, with the intent to commit theft ... ." (Docket No. 52 Ex. 2 at 3.) Consistent with this, the judgment (a *Shepard*-approved source) indicates that the defendant pled guilty to "burglary - business." (*Id.* at 4.) As the indictment and the judgment plainly show that the defendant pled guilty to a "generic" burglary, that is, an "unlawful or unprivileged entry into ... a building or structure, with intent to commit a crime," should the defendant be convicted of the Felon in Possession charge, the August 31, 1996 burglary would qualify as a predicate offense under the ACCA.[2]

### 2. Whether the February 1997 burglaries and aggravated assault occurred on one "occasion"

The defendant contends that, while he has three potentially relevant convictions arising out of the events of February 1997, these events constitute a single "criminal episode," and, therefore, they amount to only one predicate offense for purposes of the ACCA. (Docket No. 52 at 14.) "To be sure, to trigger a sentence enhancement under the ACCA, a defendant's prior felony convictions must involve separate criminal episodes. ... offenses are considered distinct

---

[2] In addition to the arguments addressing *Taylor* and *Shepard*, the defendant makes a series of unavailing arguments as to why the August 31, 1996 burglary does not qualify as a predicate offense under the ACCA. For instance, the defendant launches into a lengthy discussion of the Supreme Court's recent *Begay v. United States* decision, which concluded that a conviction for driving under the influence did not amount to a "violent felony" under the ACCA because DUI does not, for purposes of the ACCA, "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." 128 S. Ct. 1581, 1583 (2008). *Begay* is inapt because it simply does not attempt to limit the scope of the ACCA's "violent felony" provision regarding burglaries. Also, the defendant's extended arguments that rely on "facilitation" of burglary cases and non-ACCA cases, along with the argument that this burglary was not a violent act, are similarly unavailing because they cannot overcome the fact that the permitted evidence demonstrates that the defendant was convicted of a "generic burglary," which, under the ACCA, is a "violent felony." (*See* Docket No. 52 at 11-14.)

7

criminal episodes if they occurred on occasions different from one another." *United States v. Martin*, 526 F.3d 926, 938-39 (6th Cir. 2008)(internal quotation omitted).

As a general matter, two offenses constitute separate criminal episodes if, from the available record, "it is possible to discern the point at which the first offense is completed and the second offense begins." *Id.* It may be possible to discern a "break" in the criminal conduct when the evidence reveals that the defendant would have had an opportunity to "cease his criminal conduct after the first offense, and withdraw without committing the second offense" and when the offenses are committed at "different residences or business locations." *United States v. Hill*, 440 F.3d 292, 297-98 (6th Cir. 2006). Therefore, the relevant law holds that, even if two crimes occurred very close in time or location to each other, they may still constitute separate criminal episodes, where there is a clear demarcation between the two crimes. *See id.* If such a clear demarcation can be found, then the court should conclude that the crimes are separate criminal episodes, each serving as a predicate conviction for purposes of the ACCA. *Id.*

For instance, in the burglary context, where the defendant has committed two burglaries at two different locations some distance apart, the Sixth Circuit has found that the two crimes constitute two distinct criminal episodes for purposes of the ACCA, even if the burglaries are part of a single day, or even a single hour, "crime spree." *See United States v. Brady*, 988 F.2d 664, 669 (6th Cir. 1993)(the robbery of a beauty shop followed only about thirty minutes later by the robbery of a nearby bar constitute separate criminal episodes); *United States v. Carnes*, 309 F.3d 950, 956 (6th Cir. 2002)(the burglary of neighboring residences constituted two distinct criminal episodes because it was "possible to identify an endpoint between the two offenses");.

*Hill*, 440 F.3d at 298 (a burglary of a business followed by a burglary of a home across the street constituted separate criminal episodes).

Consistent with this, when the available evidence demonstrates that the burglaries all occurred within the same "complex" or at the same "site," such as within adjoining stores of a strip mall or rooms within a residence, then the Sixth Circuit has been inclined to find that the two burglaries constitute a single criminal episode. *See United States v. Shelton*, 290 Fed. Appx. 776, 780 (6th Cir. 2008); *United States v. Murphy*, 107 F.3d 1199, 1210 (6th Cir. 1997). The same logic applies when burglary is not the only crime involved; therefore, where a defendant raped two women, while maintaining control over both, the Sixth Circuit concluded that the two previous rape convictions amounted to only a single predicate conviction for purposes of the ACCA. *See United States v. Thomas*, 211 F.3d 316, 321 (6th Cir. 2000). Also, where a defendant had committed a burglary of a house and then, while fleeing the scene, committed an aggravated assault in the woods outside of the house, the Sixth Circuit concluded that the defendant had not safely escaped from the crime scene, and, therefore, the burglary and aggravated assault conviction constituted a single predicate conviction for purposes of the ACCA. *See United States v. Graves*, 60 F.3d 1183, 1185-87 (6th Cir. 1995).

This discussion raises the related issue of what evidence the district court may consider in determining whether the crimes at issue constituted one or more criminal episodes.[3] Prior to *Shepard*, the Sixth Circuit indicated that a broad review of the factual record was permitted, stating "all of our opinions on this issue [whether the predicate offenses amount to a single

---

[3] It is well settled in this Circuit that the court (as opposed to a jury) makes the determination, using a preponderance of the evidence standard, as to how many criminal episodes are involved. *United States v. Wyatt*, 189 Fed. Appx. 418, 421 (6th Cir. 2006).

9

criminal episode or not] have involved consideration of the specific facts underlying the prior convictions. Indeed, we cannot imagine how such a determination could be made without reference to the underlying facts of the predicate offenses." *Thomas*, 211 F.3d at 318 n.3.

Since *Shepard*, however, the Sixth Circuit has appeared to gradually recognize that *Shepard* requires that a court only examine the "*Shepard*-approved sources" in considering whether the conduct underlying the previous convictions amounted to one or more criminal episodes. That is, while *Shepard* does not textually extend beyond the "generic" or "non-generic" burglary issue, the logic of *Shepard* extends to all district court factual investigations under the ACCA. Indeed, at the core of *Shepard* and *Taylor* is the notion that "certainty of the record" should exist before an ACCA sentencing enhancement is imposed, and, moreover, "collateral trials" regarding past convictions should be avoided. *Shepard*, 544 U.S. at 23. The Sixth Circuit appears to have recognized that these goals are just as relevant when the court is analyzing whether conduct occurred on "different occasions" as when the court is analyzing whether the defendant was convicted of a "generic burglary."

Indeed, initially, in *United States v. Wilder* (a case that elsewhere cited *Shepard*), the Sixth Circuit concluded, without citation, that a district court did not err in examining the facts described in the pre-sentence report (a non-*Shepard* approved source) to determine that the criminal conduct at issue constituted different criminal episodes for purposes of the ACCA. 161 Fed. Appx. 545, 552 (6th Cir. 2006). However, six months later, in *U.S. v. Wyatt,* the Sixth Circuit assumed, without deciding, that it was error for the district court to rely on a pre-sentence report to resolve the "different occasions" issue. 189 Fed. Appx 418, 421 (6th Cir. 2006). In *United States v. Jones*, the Sixth Circuit discussed the issue of whether *Shepard* applied to the

10

"sentencing court's finding ... that prior offenses constitute single or multiple criminal episodes." 453 F.3d 777, 780 (6th Cir. 2006). The court appeared to conclude that *Shepard* applied, noting that two other circuits had found *Shepard* applicable to this issue, and limiting its analysis of the "different occasions" issue to sources it considered "*Shepard* approved." *Id.*

Moreover, in *Shelton*, decided two years after *Wyatt* and *Jones*, the Sixth Circuit again strongly implied that *Shepard* does limit the scope of the court's review. 290 Fed. Appx. at 780. In *Shelton*, three burglaries that the defendant committed in a short amount of time were at issue, and the Government, attempting to show that the burglaries occurred on "different occasions," proffered three sets of documents: (1) affidavits of complaint, (2) grand jury indictments, and (3) judgments of conviction. *Id.* Generally reviewing these documents, and largely not distinguishing them based on content, the court concluded that those documents did not establish that the first two burglaries were committed on different occasions, but the documents did establish a break in the criminal conduct between the first two burglaries and the third burglary. *Id.* At the conclusion of this analysis, the court noted, "*given the evidence that the court could review under Shepard*, the [third] burglary [] was a separate predicate conviction." *Id.* (emphasis added). To the court, this most recent statement clearly shows that the Sixth Circuit recognizes that the "different occasion" or "separate episode" analysis is limited to *Shepard*-approved sources.

The only evidence in the record regarding the February 1997 conduct was provided by the defendant, who, again, contends that this conduct all took place on a single day in February 1997. (Docket No. 52 at 14-17.) Among this evidence are the indictments and the judgments related to the February 1997 incident, which are plainly "*Shepard*-approved sources." (Docket

11

No. 52 Ex. C.) The other type of document in the record, however, is the "affidavits of complaint," which appear to be the affidavits that were submitted by police officers and others to a Tennessee Judicial Commissioner in support of the defendant's arrest for each individual charge connected with the February 1997 conduct.[4] (Docket No. 52 Ex. D.)

In *Jones*, the Sixth Circuit concluded that "an affidavit of complaint is a type of record that a district court can properly rely on in determining the nature of predicate offenses, consistent with the standards of *Shepard*." 453 F.3d at 780. Also, as discussed above, "affidavits of complaint" were included in the record that the court relied upon in making its "different occasions" determination in *Shelton*. 290 Fed. Appx. at 780-81. Since *Jones*, the Sixth Circuit has, at times, spoken unfavorably of using "affidavits of complaint" to make *Shepard*-source ACCA determinations, and the court has explicitly limited the applicability of *Jones* to the notion that "sentencing courts may rely on affidavits of complaint 'only' for 'the limited inquiry of whether prior offenses constitute a single criminal episode or multiple episodes." *See Medina-Almaguer*, 559 F.3d at 424 (quoting *United States v. Wells*, 473 F.3d 640, 647 (6th Cir. 2007)).

Moreover, in a recent unpublished opinion, the Sixth Circuit stated that, "when making a *Shepard* analysis sentencing courts may not consider documents such as police reports, recommendations prepared by a probation officer, or complaint applications." *United States v. Cole*, 2009 WL 1443937, *1 (6th Cir. May 22, 2009). That said, under *Jones*, the Sixth Circuit still appears to permit a district court to examine affidavits of complaint in performing the

---

[4]Multiple additional charges, such as theft and DUI, which the Government does not contend would qualify as violent felonies, were filed in connection with the events of February 1997.

12

"single episode" analysis under *Shepard*. Therefore, here, in determining whether the aggravated assault and two burglaries were part of a single criminal episode, the court will consult the indictments, the judgments and the affidavits of complaint.

While the indictments and the judgments indicate that this conduct all took place in Coffee County, Tennessee, these materials simply provide no basis to determine many of the relevant facts surrounding this criminal activity. The indictments and the judgments provide no information as to the date, time, or precise location of these offenses; rather, with remarkable inexactitude, they claim that the defendant, on "the ____ day of February 1997" assaulted Cliff Meyer with his car, and that on "the ____ day of February 1997," the defendant burglarized two habitations, specifically Susan Stewart's habitation and Mark Brothers's habitation. (Docket No. 52 Ex. C at 5, 8-9, 13, 16-17.)

The affidavits of complaint provide more insight and demonstrate that the burglaries constitute two predicate offenses under the ACCA. While the affidavits of complaint make no reference to an aggravated assault charge, the affidavits of complaint indicate that both burglaries took place on February 19, 1997 and one burglary took place at "16 Wayside Road" in Coffee County and the other took place on "Lawrence Branch" in Coffee County.[5] (Docket No. 52 Ex. 4 at 13-14.) Therefore, the affidavits of complaint demonstrate that the defendant

---

[5]The defendant notes that a "reckless endangerment" charge was "apparently" changed to an aggravated assault charge between the affidavit and the indictment. (Docket No. 52 at 18.) The reckless endangerment affidavit of complaint related to the assault on Cliff Meyer states that, on February 19, 1997, on Interstate 24 in Coffee County, the defendant rammed Meyer's vehicle while "attempting to evade arrest." (Docket No. 52 Ex. D at 2.) Because the court concludes that the defendant has a sufficient number of predicate offenses to qualify as an Armed Career Criminal, it is not necessary to consider the issue of whether the affidavits of complaint establish that the aggravated assault occurred on a "different occasion" from the burglaries.

13

burglarized two distinct homes, owned by two different individuals, and located in two different places which, under the case law discussed above, necessitates the conclusion that the defendant committed two predicate ACCA violent felonies.

As the *Shepard*-approved sources establish, by a preponderance of the evidence, that the defendant committed at least three predicate ACCA violent felonies, he would qualify as an Armed Career Criminal if he should be convicted of the Felon in Possession charge.

## **CONCLUSION**

For the reasons discussed herein, the relief sought by the defendant will be denied. Based on the present record before the court, the defendant would qualify as an Armed Career Criminal if he should be convicted of the Felon in Possession charge currently pending in this court.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

14

Case 3:07-cr-00117   Document 59   Filed 09/01/09   Page 14 of 14 PageID #: 182